FILED
2024 Dec-04  AM 10:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMIKA SHAJUAN MOMANYI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-467-GMB |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | |
| THE UNIVERSITY OF ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion to dismiss *pro se* Plaintiff Tamika Momanyi's second amended complaint filed by Defendant The Board of Trustees of the University of Alabama. Doc. 38.  In addition to filing an opposition to the motion (Doc. 40), Momanyi filed two motions for leave to amend her second amended complaint, along with 932 pages of exhibits in support. Docs. 42, 43 & 49.  The Board also filed a reply in support of its motion to dismiss (Doc. 46), so this motion is fully briefed and ripe for decision.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 24.  For the reasons below, the Board's motion to dismiss is due to be granted, and Momanyi's motions for leave to amend are due to be denied.[1]

---

[1] Momanyi also filed motion for a preliminary injunction. Doc. 36.  Because all of Momanyi's claims are due for dismissal, this motion will be denied.

# I. RELEVANT FACTS[2]

Momanyi currently attends graduate school at The University of Alabama at Birmingham ("UAB"). Doc. 35 at 3.  During a portion of her time at UAB, she served as a student-employee. Doc. 35 at 3.  Specifically, UAB hired Momanyi for an Office Associate II position in July 2024, two years into her graduate program. Doc. 35 at 4.  Shortly thereafter, Momanyi told her trainer, Janet Tatum, that she suffered from an anxiety disorder. Doc. 35 at 4.  Momanyi told Tatum that "she needed information to be broken down for better understanding due to her learning differences." Doc. 35 at 4.  "Despite this disclosure, [Momanyi] was met with condescension and was denied essential job resources and training." Doc. 35 at 4.

About one week later, Momanyi "formally notified UAB of her disability, which was already documented in her employment and academic records, and requested accommodations." Doc. 35 at 5.  Her complaint details various actions taken by UAB employees over the next several months, including but not limited to: (1) clearing out her office and placing her on administrative leave without reason (Doc. 35 at 5), (2) revoking her access to "essential [software] platforms" such as Banner and Canvas (Doc. 35 at 7, 10–11), (3) denying her "requests for accommodation" (Doc. 35 at 6–8, 10), and (4) reprimanding her at work (Doc. 35 at

---

[2] Momanyi's second amended complaint spans 53 pages.  While it includes other factual allegations, the court recites only those relevant to this decision.

6).  On various occasions, she either met with or participated in an investigation with employees of the Human Resources department to report a "pattern of retaliation and hostility" that "closely follow[ed] [her] requests for accommodations and her reports of retaliation." Doc. 35 at 6–8, 10.

"On August 21, 2023, just three weeks after" one of Momanyi's reports of "discrimination and retaliation," she started to experience "public humiliation during class sessions, sarcastic commentary, and unfair targeting in academic evaluations." Doc. 35 at 8–9.  Momanyi also "requested a solo assignment on November 13, 2023, due to her anxiety, but this request was denied." Doc. 35 at 12.  Momanyi believes these experiences were "directly related to the ongoing discrimination [she] encountered as a UAB employee." Doc. 35 at 8.

Momanyi's complaint focuses on events that occurred in classes taught by Dr. Haque and Professor Pink-Harper.  Momanyi alleges that Pink-Harper took a number of negative actions against her, like "using thinly veiled references to Janet Tatum, calling her 'Sarah, the department retiree re-hired to train the new associate.'" Doc. 35 at 9.  Pink-Harper also gave Momanyi a "significantly low grade" on an assignment even though Momanyi "adhered to all instructions." Doc. 35 at 12.  During the months that followed, "the retaliatory grading continued," and "Pink-Harper's critiques of [Momanyi's] work became excessively harsh and inconsistent with the guidelines provided." Doc. 35 at 12.

Momanyi also complains of low grades in Dr. Haque's classes, "including an extremely low midterm grade despite adherence to guidelines and requested accommodations." Doc. 35 at 16.  Momanyi later emailed Dr. Haque "regarding what she perceived as biased grading, but she received no response." Doc. 35 at 17. She "then emailed the Program Director and carbon-copied Chair Robert Blanton and Dean Kecia Thomas," but "Blanton defended Haque and dismissed [Momanyi's] concerns without fully understanding the situation." Doc. 35 at 17. Dr. Haque even "changed previously graded assignments, lowering [Momanyi's] grades." Doc. 35 at 18.  Momanyi "sought clarification" from Dr. Haque, but she did not respond. Doc. 35 at 18.

Finally, Momanyi claims that Dr. Haque: (1) made indirect references to cheating while staring directly at Momanyi (Doc. 35 at 12–13); (2) required that Momanyi recite the "ICMA Oath and Honor Code" in class (Doc. 35 at 12); and (3) assigned an essay that was "not part of the standard academic requirements" and which required Momanyi to "detail[] her experiences with retaliation and discrimination." Doc. 35 at 13.

In addition to these complaints about her professors, Momanyi raises several complaints about technology and financial aid.  For example, she states that she filed a Free Application for Federal Student Aid ("FAFSA") and accepted the resulting financial aid offer, but she was forced to acknowledge certain "Terms and

Conditions" on the UAB financial aid portal before the aid could be disbursed. Doc. 35 at 20. Although she did not accept the terms, UAB disbursed her aid, which "created significant confusion and concern for [her]." Doc. 35 at 20–21. She also claims that over the course of the fall semester, "her home Wi-Fi network was corrupted" (Doc. 35 at 11), "crucial files for her Graduate Learning Portfolio had been tampered with," (Doc. 35 at 16), and "her case file against the university was stolen from her personal laptop, forcing her to purchase multiple new devices." Doc. 35 at 17. Momanyi later learned that a UAB Systems Analyst "deleted her most recent assignments." Doc. 35 at 18. She "escalated the matter" by contacting the Registrar, who referred her to an Assistant Dean. Doc. 35 at 18. Instead of going to the Assistant Dean, "[Momanyi] felt it was necessary to let the Court . . . handle the matter." Doc. 35 at 18. Accordingly, she filed her first complaint (Doc. 1), which she later amended twice. *See* Docs. 22 & 35.

In the second amended complaint, Momanyi states nine causes of action: (1) "Disability Discrimination (ADA Title I)," (2) "Retaliation (ADA, Title V)," (3) "Hostile Work Environment (ADA, Title I)," (4) "Retaliation in Educational Programs (ADA Title II)," (5) "Discriminatory Actions in Academic Context and Retaliatory Conduct by Dr. Haque (ADA Title II and 14th Amendment)," (6) "Coercive Imposition of Terms and Conditions (ADA Title II)," (7) "Procedural Due Process Violation (14th Amendment)," (8) "Substantive Due Process Violation

(14th Amendment)," and (9) "Equal Protection Clause Violation (14th Amendment)." Doc. 35 at 23–44.  The Board moves to dismiss all claims, arguing that they are either barred by sovereign immunity or fail to state a claim upon which relief can be granted. *See* Doc. 38 at 5, 10 & 16.

## II.  STANDARD OF REVIEW

The court evaluates a motion to dismiss based on sovereign immunity "under Rule 12(b)(1) where the analysis does not involve the merits of the case." *Culverhouse v. S. Union Comm. Coll.*, 2021 WL 2417154, at *1 (M.D. Ala. June 14, 2021); *see Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists.") (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996)).  When "the [c]ourt considers a challenge to subject matter jurisdiction, 'the court must . . . take the complaint's allegations as true.'" *Culverhouse*, 2021 WL 2417154, at *2 (quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)).

Alternatively, in considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

### III. DISCUSSION

Construed liberally, the court understands Momanyi's claims to be brought under two statutes and one constitutional provision. The first statute is Title I of the Americans with Disabilities Act ("ADA"), which covers her accusations that the Board discriminated against her because of a disability, retaliated against her, and

created a hostile work environment during her time as an employee at UAB. *See* Doc. 35 at 23–31.  The second is Title II of the ADA, under which she accuses the Board of disability discrimination and retaliation in the academic context during her time as a graduate student at UAB. *See* Doc. 35 at 32–39.  The third is the Fourteenth Amendment of the Constitution, which covers her claims that the Board violated her rights to procedural due process, substantive due process, and equal protection. *See* Doc. 35 at 39–45.  Regardless of their genesis, all of these claims are due to be dismissed.

## A.    ADA Claims

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  "The Supreme Court has extended Eleventh Amendment immunity to prevent suits in federal court against a state by its own citizens." *Brown v. Fla. Dept. of Rev.*, 697 F. App'x 692, 692 (11th Cir. 2017).  And it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court . . . when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  The Board of Trustees of the University of Alabama, like any other state university in Alabama, is an arm of the

state for purposes of Eleventh Amendment immunity. *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019); *Harris v. Bd. of Tr. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012) (citing *Harden v. Adams*, 760 F.3d 1158, 1163 (11th Cir. 1985)).

There are two exceptions to Eleventh Amendment immunity, however. The first exception is that "a state may waive its immunity expressly through legislative enactment." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990). The second is that "Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment." *Id.* Because the State of Alabama has not waived its immunity, *see* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."), the court must consider whether the Board's Eleventh Amendment immunity bars Momanyi's ADA claims.

### 1.    *Title I of the ADA*

Title I of the ADA prohibits employers, including state entities, from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). In *Board of Trustees of Alabama v. Garrett*, 531 U.S. 356, 374 (2001), the Supreme Court held that Title I of the ADA was not

a valid exercise of Congress's Section 5 power such that an individual may not sue an arm of the state in federal court under Title I.   Because Congress did not appropriately abrogate Eleventh Amendment immunity when it enacted Title I, *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024), the "Board of Trustees cannot be reached under Title I of the ADA." *Skotnicki v. Bd. of Tr. of the Univ. of Ala.*, 2014 WL 3891973, at \*6 (N.D. Ala. Aug. 8, 2014).   Accordingly, Momanyi's Title I claims—Counts One, Two,[3] and Three—are due to be dismissed.

### 2.   *Title II of the ADA*

Liberally construing the complaint, the court reads Counts Four as a claim of disability discrimination under Title II of the ADA and Count Five[4] as a claim of retaliation based on the Board's alleged discriminatory conduct under Title II of the ADA.   Because the court finds that the Board is not immune from Momanyi's Title II claims, it will address their merits.

Title II of the ADA prohibits a public entity from denying "services, programs, or activities" to a person on account of his or her disability. 42 U.S.C.

---

[3] Although Momanyi describes Count Two as a claim for retaliation under Title V of the ADA, "[a] retaliation claim under Title V is predicated on an individual suffering a harm post-asserting rights under a separate ADA provision." *Dupree*, 92 F.4th at 1007.  Even though Momanyi does not explicitly state the predicate ADA provision for her Title V claim, she raises separate Title II retaliation-based claims in Counts Four and Five of her complaint. *See* Doc. 35 at 32, 34.  For this reason, the court assumes Momanyi predicated Count Two on her Title I claims.

[4] Count Six of Momanyi's complaint is labeled "Coercive Imposition of Terms and Conditions (ADA Title II)." Doc. 35 at 37.  The court construes the allegations in this count as additional support for Momanyi's disability discrimination and retaliation claims, not as an independent cause of action.

§ 12132; *Black v. Wiginton*, 811 F.3d 1259, 1269 (11th Cir. 2016).  In the education context, "Title II prevents invidious discrimination and unconstitutional treatment in the actions of state officials exercising discretionary powers over disabled students." *Assoc. for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005). Unlike Title I, "Title II of the ADA abrogates Eleventh Amendment immunity," but "only if the alleged misconduct constitutes disability discrimination under both Title II and the Fourteenth Amendment." *Laster v. Ga. Dept. of Corr.*, 2023 WL 5927140, at *2 (11th Cir. Sept. 12, 2023) (citing *Black*, 811 F.3d at 1269 (11th Cir. 2016)); *United States v. Georgia*, 546 U.S. 151, 159 (2006) (explaining that the lower courts should determine, on a case by case basis, whether Title II abrogates sovereign immunity by determining whether and to what extent the plaintiff states claims under Title II and the Fourteenth Amendment).

The Board argues that Momanyi's Title II claims should be dismissed for two primary reasons.  The first is that the  Title II claims are more accurately categorized as Title I claims because they arise out of Momanyi's employment at UAB rather than out of UAB's operation of public services, programs, or activities. *See* Doc. 38 at 15–16.  The Board thus characterizes the Title II claims as "an attempt to end run around the Eleventh Amendment's bar on private suits seeking money damages for state violations," a theory that the court rejected in *Skotnicki*, 2014 WL 3891973, at *6. Doc. 38 at 15–16.  The court disagrees.

Momanyi undeniably conflates her Title I and Title II claims in her 53-page second amended complaint.  But her allegations materially differ from the claims in *Skotnicki*.  In *Skotnicki*, 2014 WL 3891973, at *1–6, the plaintiff sued the Board of Trustees of the University of Alabama for disability discrimination while she was employed at UAB, and she presented no factual basis for disability discrimination related to UAB's provision or operation of public services, programs, or activities. *Id.* at *5–6.  Momanyi, on the other hand, invokes Title II in part because of her enrollment as a student at UAB.  Therefore, to the extent Momanyi presents a factual basis for her Title II claims in the education context, the court finds that the Board is not immune from these claims.

For its second argument in support of immunity, the Board contends that Momanyi's Title II claims are barred because her Fourteenth Amendment claims fail. Doc. 38 at 16–17.  This argument puts the cart before the horse; the court "must decide, taking all of [Momanyi's] allegations as true, whether [the Board's] alleged conduct violates Title II because 'prior to reaching any constitutional questions, federal courts must consider non-constitutional grounds for decision.'" *Atchison v. Bd. of Regents of the Univ. Sys. of Ga.*, 2014 WL 12013430, at *4 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)).  And "if there is no claim for a violation of Title II, then . . . the claim is dismissed on the ground that the plaintiff has failed to state a claim rather than that the court lacks jurisdiction due to sovereign immunity."

*Id.*  Therefore, the court first must consider whether Momanyi states disability or retaliation claims under Title II of the ADA.

### a.    Disability Discrimination

Momanyi alleges, among other things, that she suffered discrimination because of her anxiety disorder during her time in graduate school at UAB.  To state a discrimination claim under Title II of the ADA, a plaintiff must allege (1) that she is a "qualified individual with a disability"; (2) that she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities or "was otherwise discriminated against by such entity"; and (3) that the exclusion, denial, or discrimination was "by reason of [her] disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132) (cleaned up); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007).  Because Momanyi has not alleged that she was excluded from participation in or denied the benefits of the Board's services, programs, or activities—or was otherwise discriminated against by the Board—this claim fails as a matter of law.

"The ADA does not explicitly define 'services, programs, or activities.'" *Schwarz v. The Vills. Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1174 (M.D. Fla. 2016).  But because the "Act must be broadly construed," *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996), the public-benefit prong should be interpreted as "a catch-all phrase that prohibits all discrimination by a public entity, regardless of

the context." *Bledsoe v. Palm Beach County Soil & Water Cons. Dist.*, 133 F.3d 816 (11th Cir. 1998) (citation omitted).  Despite this broad construction, not every negative action taken by a public entity amounts to a violation of Title II.  Instead, an ADA plaintiff must plausibly allege that the public entity deprived her of "meaningful access" to a "service, program or activity" or otherwise discriminated against her because of her disability. *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1328 (N.D. Ga. 2017).

For example, in *Manning v. North Carolina State University*, 2024 WL 1183066, at *1 (E.D.N.C. Mar. 19, 2024), a doctoral candidate who served as a graduate teaching assistant brought an ADA claim against his university and his supervising professor.  The candidate, who suffered from depression, claimed his professor mocked him, told him she needed to "'push him' to help him become a . . . better doctoral student," and "criticized his work without constructive criticism." *Id.* at *2.  She also required him to document his availability, including scheduled doctors' appointments, on a shared calendar. *Id.*  And when the following semester rolled around, she did not select him for a second graduate assistant position, "because he was a 'liability.'" *Id.*  The court dismissed the candidate's ADA disability discrimination claim because he did not plausibly allege that the university excluded him or denied benefits on the basis of his disability. *Id.* at *12.  The court reasoned that "[s]haring availability on a calendar . . . as all graduate students and

faculty must do, does not violate the ADA." *Id.* And because the graduate assistant positions were not a requirement to receive the doctoral degree, the candidate did not plausibly allege that the university denied him a public benefit, especially since the candidate remained in the graduate program despite the professor's refusal to hire him into a second position. *Id.*

In the same vein, in *Drown v. Utah State Office of Education*, 2018 WL 3215665, at *5 (D. Utah Feb. 21, 2018), a teacher with post-traumatic stress disorder claimed the state's education board discriminated against her when it investigated claims of misconduct, issued a letter of reprimand against her, and flagged her file after she contacted a student's parents despite the school board's direction not to do so. *Id.* at *1. The district court dismissed the teacher's complaint, stating that she merely complained she was "deprived of an untarnished or undamaged or discipline free teacher-licensing file," not that she was "treated differently than other teachers who were the subject of complaints." *Id.* at *5. The teacher therefore did not show that the education board denied or excluded her from any programs or activities or otherwise discriminated against her. *Id.*

On the other hand, when a student alleges that a school deprives him of the benefits of his education, this may state a plausible Title II claim. For example, in *Moss v. Shelby County*, 401 F. Supp. 2d 850, 852 (W.D. Tenn. 2005), a sixth grader suffered from asthma, notified the school about his condition, and suffered three

asthma attacks at school.  Later, when he came to gym class in the wrong attire, his teacher made him "spend the duration of gym class doing jumping jacks, sit-ups, and walking," consistent with school policy. *Id.*  The boy suffered another asthma attack, but his teacher did not allow him to go to the school's office until his condition worsened. *Id.*  After the school called the paramedics, the child could not return to school for the rest of the day. *Id.*  The court explained that the defendants were "obligated to modify the school's standard punishment to accommodate" the student because they knew "that [the student] suffered from asthma and that he had experienced three prior asthma attacks." *Id.* at 856.  His teacher "could have asked [him] to do something that would not have brought on an asthma attack." *Id.*  On these facts, the district court found that the student stated an ADA claim against the school because he plausibly alleged that the school deprived him of the benefit of his education by effectively preventing him from attending the remainder of the school day. *Id.*; *see also K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 360–61 (S.D.N.Y. 2005) (holding in a Title II peer-to-peer harassment case that a jury could find that the school effectively prevented the student from attending school by failing to address the student's reports that he was the target of repeated, severe, and ongoing physical abuse and "disability-related slurs").

Momanyi's allegations fall in line with those at issue in *Manning* and *Drown.* She complains that the Board, through Professors Pink-Harper and Dr. Haque,

denied her the benefits of her graduate degree by (1) making negative comments about her in class (Doc. 35 at 12–13, 34–35); (2) requiring a personal essay and a public recitation of the "ICMA Oath and Honor Code" (Doc. 35 at 12–13); (3) giving her low grades accompanied with harsh feedback (Doc. 35 at 12, 16–18, 35); and (4) denying her request for a solo assignment. Doc. 35 at 12. But being forced to do "what all graduate students . . . must do," *Manning*, 2024 WL 1183066, at \*12, like completing assignments and receiving feedback, is not actionable under Title II. Similarly, Momanyi's complaints of low grades do not entitle her to relief under the ADA because she has no right to an untarnished or undamaged GPA. *See Drown*, 2018 WL 3215665, at \*5. Nothing in Title II of the ADA requires her teachers to give her preferential treatment—it only prevents discrimination on the basis of her disability, something Momanyi's second amended complaint does not adequately allege.

In sum, Momanyi's amended complaint does not include factual allegations supporting her claim that the Board denied her the public benefits it offers, such as the ability to enroll in or complete the graduate program, register or attend classes, or gain credits towards receiving a degree. And she does not allege that the Board "otherwise discriminated against" her. She does not even claim that any specific non-disabled students were treated differently or more favorably than her. Accordingly, Momanyi fails to state a Title II disability discrimination claim.

### b.    Retaliation

Momanyi also claims that the Board engaged in retaliatory conduct.  The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). Because the anti-retaliation provision is similar to Title VII's prohibition on retaliation, the court "assess[es] ADA retaliation claims under the same framework [it] employs for retaliation claims arising under Title VII." *Stewart v. Happy Herman's Cheshire Br., Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *Lombard v. TZ Ins. Sols., LLC*, 2014 WL 2600091, at *3 (M.D. Fla. June 10, 2014).  Accordingly, a plaintiff establishes a *prima facie* case of retaliation under the ADA when she shows that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) the adverse action was causally related to the protected expression." *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (internal quotation marks and citation omitted).

Statutorily protected expression can range from the filing of an EEOC charge to a request for accommodation or even an informal complaint to an employee's superiors. *See id.*; *Lombard*, 2014 WL 2600091, at *4; *Wooden v. Dolgencorp, LLC*, 2022 WL 2008802, at *3 (N.D. Fla. Feb. 1, 2022).  But "the 'wide range' of protected activity clearly does not include those situations where the opposition relates not to unlawful . . . practices but to a personal grievance." *Reynolds v. Golden Corral*

*Corp.*, 106 F. Supp. 2d 1243, 1253 (M.D. Ala. 1999) (internal quotation marks and citation omitted).  At a minimum, the complaint needs to be specific enough that a reasonable person would have understood that the plaintiff was complaining about disability discrimination. *See id.* at 1254; *Flippo v. Am. Power Source, Inc.*, 20 F. Supp. 3d 1299, 1314–15 (N.D. Ala. 2014); *Gonzalez v. Ashcroft*, 2005 WL 8155558, at *4 n.1 (S.D. Fla. Nov. 2, 2005).

After a plaintiff shows that she engaged in statutorily protected expression, she must also allege that she suffered an adverse action and that the expression and the adverse action were causally related.  An "action is considered adverse only if it results in some tangible, negative effect," *Higdon*, 393 F.3d at 1219 (quoting *Shotz*, 256 F.3d at 1182–83) (cleaned up), and it "must meet a 'threshold level of substantiality' before it can serve as the basis of a retaliation claim." *Id.* (quoting *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)).  At a fundamental level, the ADA is not a "code of civility," and "not everything that makes [a plaintiff] unhappy is an actionable adverse action." *Id.* (internal quotation marks omitted) (quoting *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998)).

Although Momanyi points to plenty of personal grievances in her complaint, she does not allege any statutorily protected expression under the ADA.  And while she alleges in conclusory fashion that she made "requests for accommodation"

during her graduate program (*see* Doc. 35 at 10, 12–13, 32), nowhere in the complaint does she describe the substance of these requests, identify the person to whom she directed them, state when she made the requests, or explain how they related to her anxiety. Likewise, her emails to the "Program Director" or the program chair[5] (*see* Doc. 35 at 17), do not amount to statutorily protected activity since she does not allege that she complained of discrimination or even discussed her disability in these emails so as to put the director, chair, or dean on notice of a claim of disability discrimination. This failure to allege that she engaged in statutorily protected activity is fatal to her claim.

Momanyi's failure to allege that she suffered from an action that is sufficiently adverse under the ADA is an independent basis for dismissing her retaliation claim. Momanyi claims that Professor Pink-Harper and Dr. Haque graded her unfairly (Doc. 35 at 12, 16–18) and made references during class periods to academic dishonesty and her employment with UAB. Doc. 35 at 9, 12–13. This may be true, but not everything that makes Momanyi unhappy or uncomfortable is an actionable adverse action. *See Higdon*, 393 F.3d at 1219. Momanyi does not allege that any of these actions by Pink-Harper or Haque affected her ability to receive her degree or

---

[5] Specifically, Momanyi alleges that: (1) she "emailed Dr. Haque regarding what she perceived as biased grading, but received no response"; (2) she "then emailed the Program director and carbon-copied Chair Robert Blanton and Dean Kecia Thomas"; and (3) she "sought remediation once again, carbon copying Dr. Robert Blanton." Doc. 35 at 17. Afterwards, "[i]nstead of resolving the issue, Blanton defended Haque and dismissed Plaintiff's concerns without fully understanding the situation." Doc. 35 at 17.

had any other tangible, material effect on her ability to complete her graduate program.  And even if her professors' comments caused some degree of public humiliation or could be characterized as rude, Title II does not provide Momanyi a remedy.

Momanyi's complaint therefore has insufficient factual allegations, taken as true, to raise her right to relief above the speculative level for any of her Title II claims.  And because the court finds that the misconduct alleged in Momanyi's complaint does not constitute disability discrimination under Title II, it will not analyze the same misconduct under the Fourteenth Amendment. *See Laster*, 2023 WL 5927140, at *2; *Atchison*, 2014 WL 12013430, at *4.  Accordingly, all of Momanyi's Title II claims are due to be dismissed with prejudice.

**B.    Fourteenth Amendment Claims**

Momanyi's remaining claims fare no better.  Counts Seven, Eight, and Nine do not state a viable Fourteenth Amendment cause of action.  Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV.  But the Fourteenth Amendment does not provide individuals with a private right of action to enforce their due process or equal protection rights. *SP Federica, LLC v. Glynn County*, 173 F. Supp. 3d 1362, 1373 (S.D. Ga. 2016).  Rather, "it is only via the statutory vehicle of 42 U.S.C. § 1983

21

that a plaintiff may seek to vindicate [her] 14th Amendment rights." *McBride v. Murray*, 2006 WL 734542, at *2 (N.D. Ga. Mar. 17, 2006) (citing *BellSouth Telecomms., Inc. v. MCImetro Access Trans.*, 317 F.3d 1270, 1296 (11th Cir. 2003)).

Even if Momanyi had invoked § 1983 in her complaint, that statute allows a plaintiff to sue only a person, municipality, or local government acting under color of state law that causes "the deprivation of any rights, privileges, or immunities secured by the Constitution." *See Monell v. Dept. Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (2018). Because a state, or an arm of the state, is not a person under § 1983, *Will v. Mich. Dept. of St. Pol.*, 491 U.S. 58, 71 (2012), "the Board of Trustees [of the University of Alabama] is not a suable entity under § 1983." *Harris*, 846 F. Supp. 2d at 1241.

Momanyi does not explicitly use § 1983 as the vehicle for her Fourteenth Amendment procedural due process, substantive due process, and equal protection claims. Even if the most liberal reading of her complaint would allow the court to read in a § 1983 claim, it could not reform the complaint to substitute proper defendants. Although courts must show leniency to *pro se* litigants, the court cannot "rewrite an otherwise deficient pleading in order to sustain an action." *Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (internal quotation marks and citation omitted). Therefore, even reading Fourteenth Amendment claims under § 1983 into Momanyi's complaint, her failure to name a person or entity subject to

suit would compel the dismissal of these claims.

## IV. MOTION FOR LEAVE TO AMEND COMPLAINT

After the Board filed its motion to dismiss Momanyi's second amended complaint, Momanyi filed two motions seeking leave to amend her complaint yet again. Docs. 42 & 49.  In the first, she included her proposed amendments to the complaint as well as 932 pages of exhibits. Docs. 42 & 43.  She asked the court for an opportunity to "clarify her claims by invoking laws under the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983 for retaliation and discrimination related to her protected speech activities, as well as Breach of Contract and the Family Educational Rights and Privacy Act (FERPA)." Doc. 42 at 1.  Additionally, she "invokes her claims under the [ADA and] Section 504 of the Rehabilitation Act of 1973." Doc. 42 at 1.

In Momanyi's second motion, she "invokes the First and Fourteenth Amendment to the U.S. Constitution," again, but this time "for violations of her rights to privacy and equal protection." Doc. 49 at 1.  She also explains her position that the exhibits attached to the earlier motion to amend (Doc. 42) support claims for not only breach of contract but also promissory estoppel. Doc. 49 at 2–3.  Finally, she states that she has "discovered additional facts" that "reflect the university's broader failure to safeguard [her] constitutional and statutory rights to privacy and confidentiality under 42 U.S.C. § 1983." Doc. 49 at 5.  Both of Momanyi's motions

to amend are due to be denied.

A district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted). Where a more carefully drafted pleading might state a viable claim, a district court should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). However, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id*.; *see Johnson v. Broussard*, 2017 WL 2687464, at *6–7 (N.D. Ala. June 22, 2017) ("There is no reason to require defendants to expend additional time and money defending claims that cannot possibly succeed."). "The court may deny amendment as futile if the court decides as a matter of law 'that the complaint, as amended, would necessarily fail.'" *Todd v. City of Tuscaloosa*, 2022 WL 17345779, at *3 (N.D. Ala. Nov. 30, 2022) (quoting *SFM Holdings, Ltd. v Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014)).

Momanyi already amended her complaint on two occasions, but she now asks

24

for permission to file a third amended complaint.  In addition to the claims in her second amended complaint, Momanyi requests leave to add claims for: (1) violations of the First Amendment, (2) violations of the Family Educational Rights and Privacy Act ("FERPA"), (3) violations of the Health Insurance Portability and Accountability Act ("HIPAA"), (4) breach of contract and promissory estoppel, and (5) violations of Section 504 of the Rehabilitation Act of 1973.[6] Docs. 42 & 49. There are substantial reasons for denying the motions to amend.

First, as explained in detail above, Momanyi's ADA claims fail as a matter of law and any attempt to state a cause of action would be futile.  Additionally, as with her Fourteenth Amendment claims, any attempt to add a First Amendment claim would necessarily fail because the Board remains an entity that cannot be sued under § 1983, whether for a violation of the Fourteenth Amendment or the First. *See Harris*, 846 F. Supp. 2d at 1241; *Hamman v. Univ. of Cent. Fla. Bd. of Trs*.,

---

[6] Momanyi also requests leave to add state-law claims for medical malpractice, negligence, and breach of confidentiality. Doc. 49 at 2.  In support, she states: (1) that she has "discovered her spouse's medical records were accessed without consent," (2) that "[p]hysicans documented sensitive information" from visits with her, (3) that the "university and UAB Health System" relied on "outdated consent forms" and "fail[ed] to implement adequate safeguards for patient information," and (4) that "students made comments referencing private details about her health and personal life, including matters tied to a specific facility she visited for a sensitive issue." Doc. 49 at 3–6.  The addition of these claims would be an impermissible expansion of this lawsuit to rope in new defendants on a different set of facts. *See Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015) ("[A] plaintiff may join multiple defendants in a single action only if the right to relief asserted against them arises 'out of the same transaction, occurrence, or series of transactions or occurrences' and if 'any question of law or fact common to all defendants will arise in the action.'") (quoting Fed. R. Civ. P. 20(a)(2)). In addition, Momanyi cannot bring claims on behalf of her spouse. *Franklin v. Garden St. Life Ins.*, 462 F. App'x 928, 930 (11th Cir. 2012).

2024 WL 3912913, at \*6 (M.D. Fla. Aug. 23, 2024) ("What Plaintiff alleges is a claim for First Amendment retaliation, which must be brought under 42 U.S.C. § 1983."). Likewise, asserting new claims under FERPA and HIPAA would be futile because neither statute provides a private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002) (holding that Congress did not create any new enforceable rights under FERPA); *Laster v. CareConnect Health Inc.*, 852 F. App'x 476, 478 (11th Cir. 2021) (holding that no private right of action exists under HIPAA).

Second, there have been repeated failures to cure deficiencies in the complaint. The Board has filed three motion to dismiss, and Momanyi has received several opportunities to fix the issues highlighted in those motions. *See* Docs. 22 & 26. In fact, the previous motions to dismiss flagged many of the deficiencies addressed in this opinion, and Momanyi either did not bother to fix them or could not fix them under the law. As for Momanyi's effort to allege new claims for breach of contract, promissory estoppel, and a violation of Section 504 of the Rehabilitation Act of 1973, the factual basis for these claims has been present since her original complaint in April 2024 and Momanyi has not explained why she waited so long to assert them.[7] On this record, permitting Momanyi another bite at the apple would

---

[7] Like Momanyi's ADA claims, her Section 504 claims arise out of alleged disability discrimination in the academic and employment contexts. *See* Doc. 42 at 6–9, 19–21. Filing suit under Section 504 for academic claims would be futile. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) ("Given the textual similarities between the two statutes, the same standards govern claims under both.") (internal quotation marks and citation omitted). While the Board may not be covered by sovereign immunity for employment-based Section 504 claims,

be a waste of the court's and the Board's resources.[8]   Accordingly, the motions to amend are due to be denied.

## V.  CONCLUSION

For these reasons, it is ORDERED as follows:

1.     The Board's Motion to Dismiss (Doc. 38) is GRANTED.

2.     Momanyi's Motion for Leave to Amend (Doc. 42) is DENIED.

3.     Momanyi's Motion for Leave to Supplement (Doc. 49) is DENIED.

3.     Momanyi's Motion for Preliminary Injunction (Doc. 36) is DENIED.

The court will enter a separate order dismissing all claims in this case with prejudice.

DONE and ORDERED on December 4, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

this vehicle has been available to Momanyi since her first complaint.  Momanyi's motion does not include any new facts or evidence related to her employment, which ended in September 2023, that could not have been included in her previous complaints. *See* Doc. 42; Doc. 35 at 11.

[8] In fact, after the court permitted Momanyi to amend her complaint despite her violation of the court's previous orders (*see* Docs. 35 & 37), the court cautioned her that it would "not permit any further amendments to the Second Amended Complaint without good cause." Doc. 37.  Momanyi has not shown good cause for these last-ditch efforts to amend her complaint.